## SWINGLEHURST v. BALLARD.

(Court of Appeals of District of Columbia. Submitted May 16, 1919. Decided June 2, 1919.)

### No. 1233, Patent Appeals.

1. PATENTS ⟪⟫106(3)—INTERFERENCES—JUNIOR PARTY HAS BURDEN OF PROOF.

The junior party to a patent interference proceeding has the burden of proof.

2. PATENTS ⟪⟫106(3)—INTERFERENCES—ORDER OF PROOF.

Evidence offered by junior party to an interference proceeding to show that the senior party had derived the invention from him is part of the junior party's case in chief, and was properly excluded when first offered during rebuttal.

3. PATENTS ⟪⟫113(6)—INTERFERENCES—HARMLESS ERROR—EVIDENCE.

Excluding testimony that the senior party to an interference proceeding constructed his machine in a factory in which a person worked who had knowledge of the junior party's invention is not prejudicial, even if erroneous, since it does not tend to prove that the senior party acquired knowledge of the junior party's invention.

4. EVIDENCE ⟪⟫75—PRESUMPTION—FAILURE TO QUESTION WITNESS.

Where the junior party to an interference proceeding contended that the senior party secured information regarding his invention from a third person working in a factory where the senior party's machine was constructed, his failure to ask the third person whether he had disclosed the invention raises a presumption against his contention.

5. PATENTS ⟪⟫91(1)—PRIORITY—PRESUMPTION.

Party first filing a patent application is presumptively the inventor, and that presumption remains until overcome by proof.

6. PATENTS ⟪⟫91(4)—REDUCTION TO PRACTICE—RIB KNITTING MACHINE.

Evidence that junior party to an interference proceeding conducted a test of an attachment for rib knitting machines which reduced, but did not eliminate, certain undesirable lines, and that nothing more was done for three years, when senior party had entered the field, *held* to sustain concurrent decisions by Patent Office tribunals that there had been no reduction to practice.

7. PATENTS ⟪⟫112(1)—EFFECT OF CONCURRENT PATENT OFFICE FINDINGS.

A concurrent decision of the three Patent Office tribunals with respect to the facts will not be disturbed, unless palpably wrong.

Appeal from the Commissioner of Patents.

Interference proceeding in the Patent Office between George L. Ballard and Harry Swinglehurst. From a decision by the Commissioner of Patents in favor of Ballard, Swinglehurst appeals. Affirmed.

Hubert Howson, of New York City, and T. Walter Fowler, of Washington, D. C., for appellant.

William F. Hall, of Washington, D. C., for appellee.

SMYTH, Chief Justice. The invention involved in this interference relates to an attachment for rib knitting machines. There are 13 counts, of which the following two are typical:

1. In combination in a circular knitting machine, a needle cylinder, a needle dial and connecting means between them to maintain them in fixed

relation to each other, said connecting means having a plurality of passes for the fabric, with means for effecting the opening of said passes in succession for the unrestrained movement of the fabric therethrough, the opening of each pass being followed by the closing of its members to thereby maintain the needle cylinder and dial in said fixed relation while another pass is open, substantially as described.

13. In a knitting machine, dial holding means comprising relatively fixed abutments, two or more dogs, levers carrying said dogs, an operating connection for said levers, and means for moving said operating connections to hold one or more of said dogs in an operative position with respect to said fixed abutments during release of another of said dogs.

[1] Ballard filed his application on January 9, 1915; Swinglehurst filed his on February 6, 1915. Swinglehurst is therefore the junior party, and of course, the burden is on him.

The machines of the prior art made in the knitted fabric what was known as "dog lines." This was undesirable. To develop a machine which would not make these lines was the problem to be solved. Ballard proved that a machine embodying the claims of the issue was constructed under his supervision on or about January 1, 1915, more than a month before Swinglehurst filed. Swinglehurst claims that he conceived the invention in March, 1912, and soon thereafter disclosed it to one Larkin, who made a drawing of it at or about the time. This drawing is the same as that set forth in Swinglehurst's application. At the time that Ballard filed Swinglehurst was inactive, and there is nothing to show he had done anything upon his invention for months prior thereto.

Swinglehurst contends that Ballard is not an original inventor, but derived his knowledge of the invention from Larkin, and thereby indirectly from him. He says in this regard that during the fall of 1914 Larkin was employed as a designer of knitting machines by the Wildman Manufacturing Company, Ballard's assignee, and from that circumstance he reasons that Ballard had an opportunity of acquiring the requisite knowledge from Larkin, and therefore that he had thus acquired it. In support of the claim that Larkin was employed by the Manufacturing Company, he presented in rebuttal a deposition of Larkin to that effect; but it was excluded on the ground that it was not proper rebuttal. He asserts that this was error. If he is wrong, there is no evidence of Larkin's employment by the Manufacturing Company, and the basis of his claim that Ballard derived the invention from him disappears.

[2-4] The purpose of his offer was to show that he was entitled to priority over Ballard by reason of the fact that the latter had derived the invention from him. This was manifestly a part of his case in chief, and no error was committed in denying it admission as rebuttal. Besides, if it was permissible in rebuttal, no prejudice could have resulted from its exclusion. The mere fact that Larkin possessed the knowledge and worked for the Wildman Manufacturing Company, the establishment in which Ballard's machine was constructed, did not prove, or even tend to do so, that Ballard had an opportunity of acquiring the knowledge. It was under the control of Larkin, and he does not show in his deposition that he was willing to impart it to Ballard or anybody else. How, then, can it be said that Ballard had an

opportunity to get it? Moreover, Larkin does not say that he divulged the knowledge either directly or indirectly to Ballard. He was Swinglehurst's witness, called by him in chief, and the fact that he was not interrogated upon the point at that time, or when he was put on in rebuttal, tends strongly to show that Swinglehurst knew he had not revealed the information to Ballard. Swinglehurst had it in his power to extract the truth from Larkin when he was on the witness stand. Why did he not do it, instead of asking the court to draw an unwarranted inference from the circumstance of Larkin's employment? His failure to do so raises a presumption against the verity of the contention which he makes. Gallagher v. Hastings, 21 App. D. C. 88, 98; Alexander v. Blackman, 26 App. D. C. 541; Schmidt v. Clark, 32 App. D. C. 290; Huff v. Gulick, 38 App. D. C. 334.

[5] Complaint is made because Ballard was not called to prove his inventorship, and in this relation it is asserted that an application is a mere pleading not proof. But this is a misconception of the law. He who files first is presumably the inventor, and that presumption remains with him until it has been overcome by proof. Patent Office Practice Rules, 166; Hunter v. Stikeman, 13 App. D. C. 214; Smith v. Smith, 31 App. D. C. 518.

Ballard is assailed for not testifying that he was the inventor. He swore that he was in his application, and that was enough until there was evidence to the contrary. There is no ground for the criticism.

[6, 7] Swinglehurst urges that he reduced the invention to practice in the early part of March, 1912, by building a machine embodying it, and that a satisfactory test of the machine was made about that time. The testimony of Swinglehurst and the witness Morley, the only other person interrogated concerning the matter, is to the effect that by the machine in question the objectionable dog lines were made "somewhat less"; "that there was not evidence of the same extreme dog marks" that had been "noticed in other machines of this character." But this did not remove the difficulty which the workers in the art complained of. They required a machine that would do more than somewhat lessen the undesirable lines, and this machine, according to Swinglehurst's testimony and that of his witness Morley, did not answer that purpose.

If Swinglehurst believed in 1912, at the time he made the test just mentioned, that his machine met the requirements of the situation, why did he not build it and put it upon the market? He knew that such a machine was much desired by the trade, and would command a large sale; but he did nothing until another had entered the field, nearly three years afterwards.

In view of all the facts, the acting Examiner of Interferences found that the test did not demonstrate the practicability of the machine; that, even if it did, Swinglehurst was not diligent; and that, having failed to prove that Ballard was not the original and independent inventor, Swinglehurst's case failed, and priority must be awarded to Ballard. The Examiners in Chief and the Assistant Commissioner concurred in the finding of the acting Examiner of Interferences. We have made an independent investigation of the facts and wholly agree

with the action of the three tribunals. But this investigation was not necessary, since it is an established rule of decision that where the three tribunals concur with respect to the facts, we will not disturb the ruling, unless it is palpably wrong. Malcom v. Richards, 47 App. D. C. 582, decided April 1, 1918; Jaboski v. Johnson, 47 App. D. C. 230; Bourn v. Hill, 27 App. D. C. 291; Flora v. Powrie, 23 App. D. C. 195; Bammeter v. Thropp, 42 App. D. C. 564. The case does not come within the exception.

The decision of the Commissioner is affirmed.

Affirmed.